## J. C. SCOTT V. Q. DAVIDSON, ADMINISTRATOR, ETC.

1. In 1859 S. purchased land of R. on deferred payments, secured by notes and the vendor's lien. In 1863, the notes having matured, and S. being unable to pay them, he arranged with W. that the latter should discharge them in Confederate money, which R. was willing to accept, and that S. should give his notes to W. for the same amount, payable in long deferred instalments, and secured by mortgage on the land. W. accordingly paid R. in Confederate money, and received from S. the latter's notes and mortgage in pursuance of the arrangement. It does not

appear that W. ever agreed to receive Confederate money from S. in pay-
ment of the latter's notes to him. *Held*, that the consideration of the
notes of S. to W. was virtually the land, and not the Confederate money
accepted by R. in payment of the specie debt due the latter from S.

ERROR from Victoria. Tried below before the Hon. Wesley
Ogden.

The material facts are stated in the opinion. The suit was
originally instituted by Wheeler, but he died, and Davidson, the
defendant iu error, became his administrator, and as such was made
plaintiff in the court below.

*J. E. Bradford*, for the plaintiff in error.

*Glass & Callender*, for defendant in error.—The statement of
facts copied into the Transcript is not approved nor signed by the
judge who presided at the trial ; and it must therefore be altcgether
excluded from the consideration of this court. (Paschal's Digest,
Article 1490; Tardiff v. The State, 23 Texas, 171; Witten v.
Poindexter, 25 Texas Sup., 378; Prewitt v. Woods, 1 Texas,
522.)

The cause standing, therefore, in this court without a statement
of facts, it follows that neither the instructions to the jury, given
or refused, nor the rulings of the court upon the admission or re-
jection of evidence, can be ievised; but on the contrary this court
must presume in favor of the correctness of all the rulings of the
district court, and of the verdict and judgment rendered. (Fulg-
ham v. Bendy, 23 Texas, 34; Birge v. Wanhop, Ib., 441; Hutch-
ins v. Wade, 20 Texas, 7; Bast v. Alford, 22 Texas, 399; Bald-
win v. Dearborn, 21 Texas, 448 ; Davis v. Loftin, 6 Texas, 489;
Paschal's Digest, note 582.)

If the instructions of the court could be considered, we are
satisfied they would be found to be entirely correct.

The facts of the case, in brief, were that Scott owed Reid an
*ante bellum* specie debt for land, secured by vendor's lien. By

an arrangement between Wheeler, Scott and Reid, Wheeler advanced money and paid off Scott's debt to Reid, upon the understanding that he (Wheeler) should have for the money he advanced the same security of the vendor's lien which Reid held, and for the money so advanced he took Scott's notes at longer time, and a mortgage upon the land, in which mortgage Scott fully admits and sets out the nature of the arrangement as above.

Now Scott endeavors to avoid his debt to Wheeler, on the ground that the money Wheeler advanced to pay Reid, and which Reid accepted in satisfaction of the debt, was Confederate money. The court very properly instructed the jury that under such a state of facts this defense could not avail Scott, since the consideration for which he gave his notes to Wheeler was the satisfaction of his specie debt due to Reid, and was a valuable consideration; but that if the jury found that the money advanced by Wheeler was a mere loan to Scott, and was Confederate money, then they should find for the defendant.

There can be no doubt that the ruling of the court in regard to the true consideration of Scott's notes to Wheeler was correct. The principle is sound in itself, and has recently been affirmed by the Supreme Court of Georgia in at least two cases touching the purchase of slaves, which in that State is declared to be an invalid consideration for a contract. See cases of Dever v. Aiken, and of Grisham v. Morrow, of which synopses are given in "The American Law Register" for October, 1870, page 638, as follows:

"When D. was indebted to F. for slaves bought of him, and F. was indebted to T. for land, and by mutual agreement of the three D. gave his note to T.—the amount of the several debts being the same—this is a novation. The debts from D. to F., and from F. to T., are at an end by the new contract between D. and T., and the consideration of this contract is, on the part of T., the satisfaction of his debt to F. (Dever v. Aiken, 39 or 40, Ga.)

" When D. held a note on B. and C. as joint promissors, which note was given for slaves, and in full discharge and satisfaction of said note, A. took a note for the same amount on B. as principal and D. as security, this was a novation—the original debt ceased to exist, and the consideration of the note on B. and D. was not slaves, but satisfaction of the note on B. and C." (Grisham v. Morrow, 39 or 40, Ga.)

WALKER, J.—On page 99 of the Transcript is the conclusion of what purports to be the charge of the court to the jury who tried the case in the district court. But this part of the record is not signed by the district judge, nor in any way approved by him. It appears from the record that prior to the war Scott had purchased certain lands from Reid on deferred payments, for which he had given his notes payable in gold. The notes fell due during the war. Reid was an ardent secessionist; advocated Confederate money; and was willing to receive payments from Scott in such currency. Scott had not the Confederate money to pay him; but Wheeler, who was a merchant, and. having a large amount of Confederate money on hand, was willing to pay Reid for Scott, and take Scott's notes, secured by mortgage upon the land which he had purchased from Reid, to secure the repayment of the money to him, and this was accordingly so arranged between the parties.

Now the payment of Reid in Confederate money is in the nature of a contract fully executed, and will not be disturbed by this court. But it does not appear that Wheeler ever agreed to receive Confederate money from Scott; but on the other hand it is claimed it was to be paid in specie. It was the understanding of the parties that Reid shoud transfer his vendor's lien to Wheeler, and it was so stipulated between the parties.

Scott made three several promissory notes to Wheeler, calling for three thousand four hundred and sixty-eight dollars and eighty-

four cents each, due in three, four, and five years from date, and bearing eight per cent. interest, payable annually; and this suit is brought to enforce the payment of the notes, and foreclose the mortgage, and is defended upon the ground that the notes were given for Confederate money.

The defense proceeds upon a clear misconception of the law. If any one was injured by the transaction, it was Reid who took Confederate money for his debt. Scott certainly lost nothing, for the debt he owed to Reid was payable in coin, and he cannot be affected by the manner in which it was paid by Wheeler. He received a valuable consideration upon the notes which he gave to Wheeler, which was virtually the land he purchased from Reid. The defense set up was not maintained by the facts; the instructions of the court to the jury were fair and correct in law, and we discover no error upon the record. The judgment of the district court is therefore affirmed.

Affirmed.

Mr. Justice Ogden, having presided at the trial in the court below, did not sit in this case.